O’Neall, J.
It appears that when an executor is resident put of the >3tate, and has never made probate of the will, the ordinary may grant administration cum testamento annexu durante ahsentiu.
*105 In 4 Mod. 14, (1690) sci. fa. was brought by J. Hodge, administrator of A. Hodge, during the absence of N. Hodge, upon a judgment recovered in the Court of King’s Bench, upon which there was a writ of error brought in the ^Exchequer Chamber, and judgment affirmed ; it was, among other things, objected, that the ordinary had no comrnon law power to appoint — that his power was by statute; but the objection was overruled by Slater v. May, 2 Lord Ray 1071, recognises the power of the ordinary to appoint an administrator durante absentia, when the executor is beyond the realm.
The Stat. 38 G. 3, c. 87, gave the ordinary power to appoint an administrator, when the executor had made probate, .and gone without the realm. Lord Alvanley’s judgment in the case of Taynton v. Hannay, 3 B. & P. 30. Whether the ordinary may not, in this State, exercise a' similar power, it is not now necessary to examine. A case involving some such question, was, it is believed, decided some years ago in Columbia, and it is therefore intended to leave that matter perfectly open for future examination. In any event, whether the ordinary has or has not the power to appoint, there can be doubt that the Court of Equity may, in some shape, give relief to the parties in interest, where the executor has abandoned his trust, and removed from the State; Buchanan v. Hamilton, 5 Ves. 722. I agree, however, with the Chancellor, that this Court has no power to substitute another in the place of, and to act as, the executor of the testator. The act of ’96, for the substitution of a trustee, does not apply to such a case. It is true, an executor is a trustee, yet it is not by this general name he is distinguished and known in our acts of the legislature; he is always called an executor, as will be seen by referring to all acts in relation to executors or administrators. The separation, of executors from trustees, who have no specific legal name, is clearly made by the act of 1T45, providing for the compensation of executors, administrators, guardians or trustees, in the discharge of their respective duties and trusts. The act of ’96 applies to trustees created by deed or will, to whom estates, real or personal, are conveyed or devised to be held for, assigned to, or managed for, another. The executor is a trustee known by a specific name, designating his office, and is not embraced by the general term trustee, used in the act. His is a general trust — their’s special. His authority *and duty arise both from law and the will — their’s from the terms and object of their appointment.
In this case it appears,' or rather I so understand from what is stated, that the bank stock stands on the books of the bank, in the name of the executor; and that the bond and mortgage of Mrs. Galluehut are also to him. He has left the scrip for the bank stock, and the' bond and mortgage, with two of his friends, to be deposited for safe-keeping in the Planters’ and Mechanics’ Bank. No person, so far as I am able to discover, has any authority from him to recover the dividends of the bank stock, or to see that the security for the payment of the bond, the property mortgaged, is not aliened or removed. Under these circumstances the question is, will the Court not interfere, both for the preservation of the trust fund, and for the correct appropriation of the income ? As long as the executor remains within the jurisdiction of the Court, the Court would not, unless under very extraordinary circumstances, deprive him of the management of the trust; yet when he removes from the State, will *106 the Court permit him either to remove the trust estate, or manage it ? His removal places him beyond the process of the Court, and he is no longer liable to account to it. His removal of the trust estate might enable him to defeat the trust, and his management of it by attorney, might place it in irresponsible hands, and have the same effect. In some cases, as when the executor and his cestui que trusts remove together, the Court would permit him to remove the trust estate, and it may be that under circumstances showing that it was for the benefit of the estate, the Court would not interfere to prevent the attorney of an executor who has removed from the State, from managing the trust estate.
But generally, when an executor removes from the State, leaving both his cestui que trusts and the trust estate in the State, it is the duty of the Court of Equity, on the application of the cestui que trusts, to appoint a receiver. For there would, in such a case, be an abandonment of the trust, voluntary, it is true, on the part of the executor, and which cannot therefore benefit him, but which *the Court will take care shall not prejudice the cestui que trusts In this case the executor Goodman appears to have acted in good faith; he fully accounted under the order of this Court, and invested the balance of his testator’s estate agreeably to its order. He, as well as the petitioners, has asked the appointment of some one to act in his place. The commissioner, Mr. Gray, is the usual and proper person to be appointed receiver, and he has consented in writing to act in the place of Mr. Goodman. I think that the Chancellor, instead of dismissing the petition, ought to have appointed Mr. Gray the Commissioner, receiver for the petitioners.
It is ordered and decreed, that the decree dismissing the petition be reversed ; that James W. Gray, the Commissioner of this Court, be appointed receiver of the petitioners; and that upon the executor, Duke Goodman, transferring the bank stock, and assigning the bond and mortgage of Mrs. Galluchat, to the said receiver, he (the said Duke) be discharged from any future liability in relation to the same.
Johnson, J., concurred.
Harper, J., absent.